IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      vs.                                                       No. 1:23-cr-1614-WJ

CHRISTOPHER CHAVEZ,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S REQUEST TO PRESERVE EXCESS CONTRABAND**

**THIS MATTER** comes before the Court following a hearing on Defendant's Motion to Preserve Evidence (**Doc. 21**) and the United States' Response (**Doc. 22**). Having reviewed the pleadings of the parties, heard the oral arguments of counsel, and considered the applicable law, the Court finds the Defendant's motion is not well taken and is therefore **DENIED**.

BACKGROUND

Defendant Chavez is charged with "unlawfully, knowingly, and intentionally possess[ing] with intent to distribute" more than 400 grams of fentanyl and more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), and (b)(1)(B)(viii). **Doc. 15**. The Drug Enforcement Administration (DEA) is currently in possession of approximately "450.2 gross grams of suspected methamphetamine" and 1273[1] "gross grams of suspected fentanyl." **Doc. 21-1 at 1**.

---

[1] The DEA has two exhibits in evidence containing "suspected fentanyl." **Doc. 21-1**. Exhibit 11 contains approximately 1120.9 gross grams of fentanyl and Exhibit 12 contains approximately 152.1 gross grams of fentanyl. For the purposes of this motion, the total amount of fentanyl has been added together—equaling 1273 gross grams.

Pursuant to federal law enforcement policy, excess or bulk drug evidence is destroyed. **Docs. 21-1 & 21-2**. On October 16, 2023, the DEA informed the Government of the pending destruction—which the Government then relayed to Defense Counsel on November 16, 2023. *Id.* After receipt of this notice, Defendant filed the instant motion seeking an order to preserve the entirety of the seized contraband. **Doc. 21**. Because of the pending expiration of the 60-day timeline in the "Drug Evidence Destruction Notice" (**Doc. 21-1**), on November 30, 2023, the Court issued an Order temporarily extending the destruction period. **Doc. 23**. The Court directed the destruction date "be extended for a period of 90 days, to March 12, 2024." *Id.* **at 2**.

Prior to the filing of Defendant's Reply (**Doc. 29**), discovery[2] was provided to Defense and the contraband evidence was inspected. This discovery includes laboratory results[3] of the contraband. *Id.* **at 1**.

On January 3, 2024, the Court held a hearing to permanently resolve the preservation versus destruction issue.

## DISCUSSION

**I. Destruction of Evidence Standard**

Destruction (or preservation) of evidence in a criminal case is reviewed through the Due Process Clause. *See United States v. Webster*, 625 F.3d 439, 447–48 (10th Cir. 2010) (citing *California v. Trombetta*, 467 U.S. 479, 488 (1984)). As the policy explains, "large quantities of seized contraband drugs . . . are unnecessary for due process in criminal cases." 28 C.F.R. § 50.21(c). Thus, destruction of excess contraband consistent with standard procedures does not infringe upon Defendant's due process rights. *Illinois v. Fisher*, 540 U.S. 544, 545 (2004).

---

[2] Defendant's argument (**Doc. 21 at 2–3**) for preservation of all contraband evidence under Fed. R. Crim. P. 16 is therefore **MOOT**.
[3] Much the same, Defendant's argument (**Doc. 21 at 2–3**) regarding the need for laboratory testing is also **MOOT**.

In fact, the Government has a "usual practice of destroying excess quantities" of contraband. *United States v. McKenzie*, 13 F.4th 223, 231 (2d Cir. 2021). This policy instructs the "agency having custody of contraband drugs seized pursuant to a criminal investigation" to destroy the excess contraband *unless* the prosecution requests (in writing) that the contraband be preserved. *United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993) (citing 20 C.F.R. § 50.21(e)(1)).

Despite this usual practice, Defendant requests the Government preserve "the full quantity of the drugs." **Doc. 29 at 2**.

**II. Due Process Analysis**

In order to establish a due process violation pursuant to this framework, a Defendant must show: (1) either that the evidence had an exculpatory value that was apparent prior to its destruction or that the government acted in bad faith destroying potentially useful evidence; and (2) that the evidence was irreplaceable. *Trombetta*, 467 U.S. at 485; *Arizona v. Youngblood*, 488 U.S. 51, 55 (1988). Here, the entirety of the contraband evidence is not pending destruction—rather, only the portions exceeding 100 grams of methamphetamine and 800 grams of fentanyl. **Doc. 22 at 4**. And, as here, when evidence is destroyed based on routine practice, the traditional notions of due process are not offended. *United States v. Toro-Barboza*, 673 F.3d 1136, 1150 (9th Cir. 2012).

Defendant's motion is vague and conclusory as to the potential usefulness (i.e., materiality) of the excess drug evidence pending destruction (**Docs. 21 & 29**). Defendant alleges the drugs "must be preserved because they are exculpatory." **Doc. 29 at 2**. But Defendant offers no explanation on how the evidence is exculpatory.[4] To this point, Defendant does not challenge the

---

[4] The exculpatory nature of the excess contraband lay "only in the potential results that might be obtained from further tests," therefore meaning "the exculpatory value was latent, rather than patent" and cannot be apparent. *United States v. Dudley*, No. 18-cr-286, 2019 U.S. Dist. LEXIS 189054, at *7 (D. Colo. Oct. 31, 2019) (citing *Bohl*, 25 F.3d at 910). When evidence might be "potentially useful" if it was "subjected to tests" then the *Youngblood* standard applies. In such cases, Defense must prove "bad faith" in destruction by the Government. *Bohl*, 25 F.3d at 910.

Government followed the required regulatory procedures. The Parties agree that laboratory testing was conducted, the contraband was weighed, photographs of the narcotics were taken and retained, and "twice the minimum amount required for the most severe mandatory minimum sentence" will be retained (**Doc. 22 at 5; Doc. 29 at 1**). *See* 28 C.F.R. § 50.21(e)(2)–(4).

Defendant failed to meet his burden of establishing a due process violation by the pending destruction of evidence. Defense is not asking that the entire sample be tested nor is he requesting independent chemical testing (**Doc. 29 at 4**). Instead, it appears Defendant requests the entirety of the drug contraband be retained in case he decides to request fingerprint testing (as well as to display to the jury). *Id.* **at 3**. When, as here, a preservation request is based upon potential future testing with unknown results—it necessarily follows that the evidence cannot possess "apparent" exculpatory value. *Trombetta*, 467 U.S. at 489. Instead, the bulk contraband can only be said to be "potentially useful." *Compare Youngblood*, 488 U.S. at 58 ("Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."), *with Trombetta*, 467 U.S. at 489 (explaining that "materiality" means evidence must be apparently exculpatory); *cf. United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994) (explaining what is required to prevail under the *Trombetta* and *Youngblood* standards).

Courts routinely conclude that additional testing that could have been recovered is not exculpatory, let alone apparently exculpatory. *Hubanks v. Frank*, 392 F.3d 926, 931 (7th Cir. 2004); *Zapien v. Davis*, 849 F.3d 787, 792 (9th Cir. 2016); *United States v. Russell*, 604 F. App'x 193, 196 (3d Cir. 2015). Simply because the Government has not linked the contraband to Mr. Chavez by DNA testing "does not mean the evidence will be exculpatory." *United States v. Rogers*, No. 10-10140, 2010 U.S. Dist. LEXIS 128049, at *9 (D. Kan. Dec. 3, 2010). Despite Defendant's protestations that the evidence will be exculpatory, it nevertheless remains that the would-be test

4

results will not (and cannot), on their own, prove that the Defendant was not in possession of the drugs. *See generally United States v. Smith*, 534 F.3d 1211, 1224–25 (10th Cir. 2008).

Lastly, destruction of the excess drugs raises no issue under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the Indictment (**Doc. 15**) charges amounts in excess of 400 grams of fentanyl and 50 grams of methamphetamine—and the Government will retain twice that amount (**Doc. 22 at 4**). Defendant's argument regarding jury bias or prejudice from destruction (**Doc. 29 at 2–3**) are not well taken. Having already disposed of the other arguments, the Court finds destruction of the excess contraband does not infringe upon Mr. Chavez's due process rights.

### III. Statutory Construction

The Court would be remiss to conclude its analysis without commenting on the text and structure of the applicable statute and regulation. Here, the Attorney General "direct[s] the destruction" of drug contraband pursuant to 21 U.S.C. § 881 and 28 C.F.R. § 50.21. The regulation is designed to "prevent the warehousing of large quantities of seized contraband drugs which are unnecessary for due process in criminal cases." 28 C.F.R. § 50.21(c). Housing excess contraband drugs "presents inordinate security and storage problems which create additional economic burdens" on the Government. *Id.* Law enforcement agencies are responsible for "destroy[ing] excess contraband drugs." 28 C.F.R. § 50.21(f); 21 U.S.C. § 881(f)(2).

All that the regulation requires is the law enforcement agency (here, the DEA) "notify the appropriate U.S. Attorney, Assistant U.S. Attorney . . . that the amount of seized contraband drug exceeding the threshold amount and its packaging, will be destroyed after sixty days from the date notice is provided of the seizures." 28 C.F.R. § 50.21(e)(1). The regulation does not require notice to the Defendants. *See United States v. Gomez*, 191 F.3d 1214, 1219 (10th Cir. 1999) ("We have found no statutory or regulatory requirement that defendants or potential defendants, against whom the soon-to-be-destroyed evidence is to be used, be given notice of the destruction.") (cleaned up).

Although the Government chose to forward this notice to Defense, the Parties have not demonstrated there was any obligation to do so. *United States v. Michael*, No. 06-cr-1833, 2007 U.S. Dist. LEXIS 105143 (D.N.M. 2007) (citing *United States v. Atencio*, 435 F.3d 1222, 1232 (10th Cir. 2006)).

A plain reading of the regulation demonstrates storage of "excess contraband" creates "additional economic burdens." 28 C.F.R. § 50.21(c). Although Defense argues the excess drug contraband here is "not voluminous," **Doc. 29 at 6**, they are silent as to the existence of "additional" economic burdens placed on the Government. But the text of the regulation must be construed as a whole. ANTONIN SCALIA & BRYAN A. GARNER, *Reading Law: The Interpretation of Legal Texts* 167 (2012) (interpreting meaning requires a consideration of the "whole-text canon"). Upon review, it becomes apparent the regulation was instituted to prevent "security and storage problems" of housing "excess" contraband because of the "additional economic burden" in the aggregate. On an individual level, much can be made about the term "inordinate." But the Department of Justice policy is concerned with warehousing and stockpiling nationwide. Thus, in implementing this regulation, Schedule I and II contraband is presumed to be subject to destruction.

The policy "implements the authority of the Attorney General . . . codified at 21 U.S.C. 881(f)(2), to direct the destruction, as necessary, of Schedule I and II contraband substances." 28 C.F.R. § 50.21(b). In a duel between "direct the destruction" and "as necessary," who wins? Fortunately, the harmonious-reading canon provides further insight. *See* SCALIA & GARNER, *Reading Law* at 180–82 (detailing a preference for construing provisions "together and in harmony" rather than "by critical analysis of a single provision"). If the "Procedures governing the destruction of contraband drug evidence in the custody of Federal law enforcement authorities" is

to have any teeth, then it must mean that destruction is presumed. This is supported by subparagraph (f)(2)—which states "the U.S. Attorney or the District Attorney (or equivalent) may: request an exception to the destruction policy."

Finally, take the "title and headings" canon. SCALIA & GARNER, *Reading Law* at 35–36. Clearly the title of a section can aid interpretation. Relevant here, the title of subsection (f) of 21 U.S.C. § 881 is: "Forfeiture and destruction of schedule I or II substances." When coupled with the title of the "destruction of contraband" policy codified at 28 C.F.R. § 50.21 it becomes readily apparent that destruction is the rule, not the exception.

In sum, the Court concludes that destruction is the default. Moreover, the regulation only contemplates the Government requesting exceptions to destruction of excess contraband. 28 C.F.R. § 50.21(f)(2). Thus, the applicable laws and regulations favor destruction—and the Court will oblige.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion and Order, the Court **DENIES** Defendant's Motion (**Doc. 21**) to preserve excess drug contraband evidence.

**IT IS THEREFORE ORDERED** that the excess contraband may be destroyed after March 12, 2024, in accordance with the Court's previous Order (**Doc. 23**).

**IT IS FURTHER ORDERED** that the Assistant U.S. Attorney prosecuting this case provide notice to the appropriate DEA agent to effectuate the destruction of the excess evidence in accordance with this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE

7